Mark DUNAGAN, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 1998–SC–08030–DG.

Supreme Court of Kentucky.

Nov. 22, 2000.

Norman R. Lemme, Patrick B. McClure, Lemme & Conway, Shepherdsville, Counsel for Appellant.

A.B. Chandler III, Attorney General, Courtney J. Hightower, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

The Bullitt Circuit Court entered an order dismissing an indictment against Mark Dunagan for flagrant non-support, KRS 530.050, on double jeopardy grounds. The Court of Appeals vacated the circuit court's order and remanded for trial. We granted discretionary review and affirm the Court of Appeals.

While the Court of Appeals focused on the nature of the contempt proceeding, namely whether it was civil or criminal, we are of the opinion that the decision turns more on whether double jeopardy principles prevent prosecution for flagrant non-support after a civil court has revoked a conditionally discharged sentence and imposed jail confinement for contempt for failing to pay child support.

In a 1987 dissolution action in Jefferson Circuit Court, Dunagan was ordered to pay $65 per week child support. In 1994, a Bullitt County grand jury indicted Dunagan for flagrant non-support. According to figures presented by his former wife, Dunagan was over $10,000 delinquent in child support. In the spring of 1996, with the Bullitt County indictment still pending, the Jefferson Circuit Court found Dunagan in contempt for failing to pay child support as ordered by that court. Dunagan received a sentence of ninety (90) days in jail, discharged on the condition that he pay the court-ordered child support and make payments on the arrearage. When Dunagan failed to make the weekly payments, the court ordered him to serve 30 days of the 90 day sentence, probating the remaining 60 days on the condition that he comply with the payment order.

In September 1996, the Bullitt Circuit Court dismissed the 1994 Bullitt County indictment on Dunagan's motion, concluding that prosecuting him for flagrant non-support after the Jefferson Circuit Court had held him in contempt for failure to pay child support for the same time period would constitute double jeopardy.

The Court of Appeals disagreed, relying primarily on its previous decision in *Commonwealth ex rel. Bailey v. Bailey,* Ky. App., 970 S.W.2d 818 (1998), which held that both a flagrant non-support prosecution and a civil contempt proceeding may lie for the same failure to pay support so long as the purpose of the civil action is coercive rather than punitive. The *Bailey* court applied the distinction between civil and criminal contempt as described in *Commonwealth v. Burge,* Ky., 947 S.W.2d 805 (1996).

The power to punish for contempt is an essential and inherent attribute of judicial authority. *Young v. Knight,* Ky., 329 S.W.2d 195 (1959). In this case, the indictment and the contempt citation addressed the same failure to pay. However, the contempt citation was for failing

to perform an act ordered by the Court to enforce an individual's rights, while the indictment was for an offense against society as a whole. One issue is whether the Jefferson Circuit Court's partial revocation of a conditionally discharged sentence for Dunagan's contempt is properly characterized as having a "coercive" or "punitive" purpose. Dunagan contends that the court's actions—conditionally sentencing him to 90 days in jail, and later requiring him to serve 30 of those days—constituted punishment rather than coercion. The first contempt proceeding was clearly civil in nature since the sentence was discharged conditioned upon Dunagan's compliance with the payment order. While the second contempt proceeding may be characterized as criminal in nature, in that the circuit court partially revoked the conditional discharge and ordered Dunagan to serve 30 days of the 90 day sentence, Dunagan could have avoided any period of confinement by complying with the court's payment order.

Notwithstanding, a criminal prosecution for flagrant non-support following an incarceration for civil contempt is not double jeopardy. The civil contempt proceeding did not place Dunagan in jeopardy but rather was in response to civil contempt, designed to compel compliance with the court's previous orders. The elements of the contempt charge are not the same as the charge of flagrant non-support. Dunagan was indicted for flagrant non-support because of his persistent failure to provide support which resulted in: (1) an arrearage of more than $1,000; and (2) six consecutive months without payment. KRS 530.050. On the other hand, Dunagan was in contempt of the Jefferson Circuit Court's order as soon as he failed to comply with the terms of such. The finding of contempt in this case was not dependent upon the elements of KRS 530.050.

█ We affirm the holding in *Bailey, supra,* that a person convicted of flagrant non-support may also be subjected to civil action—even though both the criminal and the civil actions are based upon the same failure to pay support. The test is not only whether the purpose of loss of liberty in the civil action is coercive rather than punitive, but also whether the offense of flagrant non-support requires proof of facts which contempt does not. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We find that it does and, as such, hold that no double jeopardy violation results.

The decision of the Court of Appeals is affirmed and this matter is remanded to the Bullitt Circuit Court for entry of appropriate orders in conformance with this opinion.

LAMBERT, C.J., COOPER, GRAVES, and KELLER, J.J., concur.

WINTERSHEIMER, J., dissents in a separate opinion in which JOHNSTONE, and STUMBO, J.J., join.

WINTERSHEIMER, Justice, Dissenting.

I must respectfully dissent from the majority opinion because the order of the Bullitt Circuit Court dismissing the indictment on double jeopardy grounds was correct. The result in this case, although perhaps popular, is an example of the end attempting to justify the means. Due process of law should always be evenhandedly applied regardless of the result. If there is a loophole in the law, then such a gap should be closed by legislative or proper judicial action. That is not the situation presented by the majority opinion.

It is abundantly clear that Dunagan was in contempt for failing to pay support in a civil case in the amount of $12,485. The subsequent orders of the circuit court provide the area of concern. The circuit court found that Dunagan was to be sentenced to 90 days in jail for contempt, but discharged the sentence on condition that for the next two years he would make weekly payments as originally ordered plus $25 per week towards the arrearage. When

Dunagan failed to make the weekly payments, the Jefferson Circuit Court ordered him to serve 30 days of the 90–day sentence and probated the remaining 60 days on the condition that he now comply with the payment order. We conclude that the order of the Jefferson Circuit Court was punitive in nature and that the time served without Dunagan having had the opportunity to purge his contempt results in making the contempt criminal in nature.

Flagrant nonsupport as denounced in KRS 530.050 can be a felony and is a serious crime pursuant to KRS 31.100(4)(c). As observed in *Lewis v. Lewis,* Ky., 875 S.W.2d 862 (1993), a serious crime is any legal action which could result in the detaining of a defendant.

The question in this case is not the imprisonment for contempt, but the manner in which it was imposed and the unexpected consequences of the sentence for contempt. Certainly, trial judges have the authority to impose punitive sanctions, but they must be aware of the effect and possible challenge on the basis of double jeopardy and of the distinctive feature of a coercive order. In order to avoid a double jeopardy challenge, any coercive order should permit the defendant to purge himself of contempt by compliance and not require service of a sentence beyond that point.

It is generally recognized that civil contempt consists of failure of a person to do something pursuant to an order of court, generally, for the benefit of another litigant. Clearly a person may be sentenced to jail for civil contempt but the party in contempt "carries the keys to jail in his pocket" because he is entitled to immediate release upon obedience to the order of the Court. *See Commonwealth v. Burge,* Ky., 947 S.W.2d 805 (1996). The purpose of civil contempt is to compel obedience to and respect for an order of the court. It is the reason for the confinement that distinguishes civil from criminal contempt. If the purpose of the court is to punish, such sanction is criminal contempt. If it is the purpose of the court to compel into action a course of conduct, that sanction is civil. *See Gordon v. Commonwealth,* 141 Ky. 461, 133 S.W. 206 (1911); *see also Blakeman v. Schneider,* Ky., 864 S.W.2d 903 (1993); *Bailey, supra.*

A person convicted of flagrant nonsupport may be also subjected to civil action, even though both the criminal and civil actions are based on the same failure to pay support as long as the purpose of the civil action is coercive rather than punitive. If the person in contempt demonstrates the financial inability to comply with the order of the court, any subsequent imprisonment directly related thereto for contempt is punitive. *See Lewis, supra; Bailey.* Dunagan has not argued that he lacks the financial ability to comply with the order of the court.

Dunagan did not in effect "hold the keys to the jail cell in his hand" because he was conditionally discharged as a criminal defendant. He was sentenced to serve 90 days in jail for failure to pay support. This order was punitive and he was required to serve 30 days of the conditionally discharged sentence. The circuit judge did not order Dunagan to be released if he began making weekly payments. If Dunagan had begun to make payments on a weekly basis after his imprisonment, he could not have left jail until his 30–day sentence was completed. If he had failed to pay on a weekly basis after his release, he could not have avoided service of an additional 60 days in jail by beginning to make the weekly payments. The sentence Dunagan received and to some degree served had the effect of compelling obedience to the order of the Court but it was actually intended to punish him for failing to abide by the order of the Court. If it had simply coerced him to pay, advance payment on a monthly basis surely would not have triggered the service of his conditionally discharged sentence. As this Court noted in *Lewis,* where it becomes impossible for a person to obey a court order, placing that person in jail for con-

tempt for failing to obey the order becomes punitive, rather than coercive. Dunagan was ordered to serve 30 days and could not have obtained a release from jail by simply obeying the order of the court. As a result, the contempt finding became punitive, rather than coercive.

A finding of civil contempt does not necessarily prevent prosecution for flagrant nonsupport. The imposition of civil and criminal contempt sanctions for the same conduct does not automatically violate the double jeopardy clause. *See U.S. v. Ryan,* 810 F.2d 650 (7th Cir.1987). It is the purpose and character of the sanction, rather than the fact of the sanction itself, that distinguishes civil from criminal contempt. *Schneider, supra. Shillitani v. U.S.,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), *citing Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

I fully recognize the severity of the problem of flagrant nonsupport which the General Assembly addressed when it enacted KRS 530.050. Nothing in this opinion should be considered as diminishing our concern for the proper enforcement of the law as enacted by the legislature. In addition, the inherent authority of the courts to punish or sanction by contempt pursuant to the statutes and case law of the Commonwealth should not be disturbed.

In this instance, because of the unique nature of the Jefferson Circuit Court order which prevented the defendant from purging the contempt and thereby being released from confinement, the Court of Appeals was in error and should be reversed. The original order of the Bullitt Circuit Court dismissing the indictment should be reinstated.

JOHNSTONE and STUMBO, JJ., join in this dissent.