Shane SCHAFFELD, Appellant,

v.

COMMONWEALTH of Kentucky, ex rel. Natasha SCHAFFELD; Natasha Schaffeld; and Christopher J. Mehling, Judge, Kenton Family Court, Div. II, Appellees.

No. 2010–CA–001301–MR.

Court of Appeals of Kentucky.

May 25, 2012.

Karen Shuff Maurer, Assistant Public Advocate, Frankfort, KY, for appellant.

Stephen J. Elsbernd, Assistant Kenton County Attorney, Covington, KY, for appellee.

Before CAPERTON, COMBS and NICKELL, Judges.

## OPINION

NICKELL, Judge:

Shane Schaffeld appeals from an oral order entered on June 9, 2010, and a written order entered on June 28, 2010, both of which partially revoked a conditionally discharged sentence for failure to pay court-ordered child support. Following a hearing at which Shane testified, the court found Shane had violated the terms of conditional discharge by failing to remain current in his child support obligation and ordered him to serve one-third of a 180–day sentence under house arrest. When asked to set a purge amount at a hearing nearly a month later, the court denied the request, ruling Shane was not entitled to a purge amount. Although originally found guilty of contempt for nonpayment of child support, the court reasoned the matter was no longer a contempt case but now concerned revocation of a conditionally discharged sentence. On appeal, Shane argues the court erred in failing to set a

purge amount prior to placing him on home incarceration. For reasons explained below, unrelated to the purge amount issue, we reverse and remand for specific findings in light of *Commonwealth v. Marshall*, 345 S.W.3d 822 (Ky.2011).

Shane and Natasha Schaffeld were married on August 9, 2003. A child was born of their union on June 20, 2004. The couple separated in October 2004, and in March 2005, Natasha petitioned the Kenton Circuit Court to dissolve the marriage. On September 19, 2006, an agreed order was entered awarding custody of the couple's child to Natasha and visitation to Shane. On November 14, 2006, a decree was entered by the court dissolving the marriage.

According to the separation agreement incorporated into the decree of dissolution, Shane was to pay Natasha $94.96 bi-weekly in child support. Payment was not forthcoming, so on January 24, 2008, Natasha filed a verified application for an order requiring Shane to show cause why he should not be held in contempt for failing to pay child support as ordered. Natasha alleged Shane had the ability to pay but was $2,801.32 in arrears as of December 31, 2008.

An order was entered directing Shane to appear at a show cause hearing on March 24, 2008. By the time the hearing was convened, Shane was more than $3,000.00 in arrears and had made only one child support payment since 2006. The Commonwealth recommended that Shane be ordered to serve thirty days in jail. The court appointed a public defender to represent Shane and entered a denial to the alleged contempt on his behalf.

When the case was called on May 28, 2008, the Commonwealth changed its recommended punishment to 180 days, conditionally discharged for a period of two years, because Shane had consistently paid child support since his last court appearance. At that point, Shane was paying $47.48 each week but offered to pay an additional $10.00 per week to pay off the arrearage faster. Shane explained that he had not kept his child support current because his child with Natasha was cared for and he was providing for three other children born to him and his girlfriend while earning only $200.00 per week.

Shane admitted being in contempt of the child support order and the court so found. On June 13, 2008, the court entered an order of contempt sentencing Shane to serve 180 days. Based on Shane's agreement, the court ordered the sentence discharged for two years on the conditions that he complete eight hours of community service, remain current in his child support obligation, and pay an additional $11.87 per week toward the child support arrearage. No purge amount was requested and none was set. Furthermore, no appeal was pursued.

On February 2, 2010, a motion was filed on Natasha's behalf by the Commonwealth to revoke Shane's conditional discharge due to a violation of the terms of release. According to the supporting affidavit, Shane had not paid any child support since March 31, 2009, and he was $2,421.48 in arrears as of January 31, 2010.

At a hearing convened on June 9, 2010, Natasha established that she had not received any direct child support payments from Shane. A representative of the Kenton County Child Support Office testified that as of May 31, 2010, Shane was $3,513.52 in arrears; his weekly obligation was $47.48; and, his last payment of $118.70 was made on May 20, 2010.

Shane testified he had worked for Baumgardner Construction from February 2008 until October 2008 when his vehicle was repossessed and he had no means of

getting to work in a timely fashion. He stated he had earned no income from October 2008 until April 2010 when he began working at Wal–Mart. Shane testified he had lived with his girlfriend and their three children in subsidized housing at no charge. When that arrangement ended, Shane and his girlfriend [1] separately moved in with their mothers. Shane testified he and his girlfriend hoped to move into a home where the monthly rent would be $800.00; they were currently staying in a hotel.

Shane testified he looked for work weekly and applied for work at fast food restaurants, a car wash, and several factories. He further testified he had registered with a personnel service and while he passed the drug test, he failed the criminal background test due to a domestic violence order (DVO) that had expired in 2007. Shane testified he had brought his child support obligation current in April 2009 [2] and had completed the eight hours of community service he was ordered to perform.

At the conclusion of the hearing, the court framed the issue before it as whether Shane had violated the terms of conditional discharge. Upon finding a violation, the court ordered Shane to serve 180 days. The court ordered that Shane serve sixty of the 180 days on home incarceration wearing an ankle bracelet with allowance for him to leave home only to attend work and church. The court ordered that the remaining 120 days of Shane's sentence be conditionally discharged for two years. The court reiterated it was not entering a new contempt order, but rather was revoking Shane's conditional discharge due to a

violation of its terms. A formal order revoking conditional discharge was entered on June 28, 2010.

It was not until a hearing on July 7, 2010, that Shane's attorney moved the court to set a purge amount, arguing that Shane's failure to pay child support had not been willful and that he had paid child support any time he was employed. The court stated it saw the evidence differently, would not reconsider its prior order, and overruled the motion, finding Shane was not entitled to a purge amount because the matter no longer concerned contempt. Even so, in response to an inquiry from defense counsel, the court confirmed it would consider the debt purged if the arrearage was paid in full. [3] That same day, the Department of Public Advocacy was appointed to represent Shane on appeal. We now reverse and remand for the following reasons.

## LEGAL ANALYSIS

 Shane casts this appeal in terms of whether the trial court erred in not setting a purge amount following an earlier finding of contempt. We disagree and deem the real question before us to be whether a trial court may revoke a previously imposed conditional discharge from a contempt finding and impose a sanction without setting a purge amount. The appropriate time to challenge the absence of a purge amount was when Shane was found to be in contempt on June 13, 2008. Having failed to request a purge amount at that time, and having failed to appeal the finding of contempt or the sentence,

---

**1.** In addition to having three children with Shane, his girlfriend also had two children by another man for whom she received child support from their father. These two children also lived in the home with Shane and his girlfriend.

**2.** $2,900.13 was taken from his tax return on March 19, 2009.

**3.** The exact amount of the arrearage was obtainable from the Kenton County Child Support Office.

that issue is not properly preserved for our appeal. *See Todd v. Commonwealth,* 716 S.W.2d 242, 248 (Ky.1986). Though the issue of whether a purge amount or action should have been set contemporaneously with the finding of contempt is not properly before us, we nevertheless note that under *Com., Cabinet for Health and Family Services v. Ivy,* 353 S.W.3d 324, 335 (Ky.2011), a trial court errs when it fails to set a purge amount or action upon finding a party in contempt. However, because Schaffeld did not object at the appropriate time, we can provide no relief despite the court's clear error.

■ We find no published precedent addressing the issue pertinent to our review. However, this same issue was resolved by other panels of this Court in *Peniston v. Commonwealth ex rel. Ford,* No. 2010–CA–000957–MR, 2011 WL 2693973 (rendered July 8, 2011, unpublished) and *Batton v. Commonwealth ex rel. Noble,* No. 2010–CA–001056–ME, 2011 WL 1085635 (rendered March 25, 2011, unpublished).[4] Our Supreme Court granted discretionary review in *Batton,* Case No. 2011–SC–000225, and on November 16, 2011, entered an Opinion and Order vacating the Court of Appeals opinion and remanding that case to a panel of this Court for reconsideration in light of *Marshall,* wherein the Supreme Court sought to clarify the findings necessary to revoke probation for failure to pay child support.

On facts strikingly similar to those presented in this case, *Batton* held the revocation of conditional discharge for failure to pay a child support obligation did not constitute a new finding of civil contempt. *Batton* also emphasized that any argument

about the need for a purge amount should have been raised by appeal of the contempt order and sentence-neither of which occurred. On the strength of *Gamble v. Commonwealth,* 293 S.W.3d 406, 410 (Ky. App.2009), the *Batton* panel found the trial court's written order, which did not contain specific findings, was sufficient because the trial court had entered informal written findings into the record the day after the revocation hearing.

After thoroughly discussing *Gamble,* *Marshall* reversed a trial court for not making an explicit finding on the record as to whether a defendant had made *bona fide* attempts to pay child support but had failed to do so through no fault of his own. 345 S.W.3d at 833. *Batton* remains pending before another panel of this Court on remand. Of relevance to this case is the fact that the Supreme Court did not vacate and remand *Batton* due to the absence of a purge amount. *Marshall* does not address the setting of a purge amount.

We move now to the question we believe is properly before us—whether a trial court may revoke a conditionally discharged sentence due to violation of its agreed terms for payment of child support without setting a purge amount, even where the sentence conditionally discharged was imposed for contempt for failure to pay child support. The applicable standard of review of a revocation of conditional discharge is stated in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), which we adopted in *Gamble.*

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for

---

4. While we recognize that unpublished opinions have no precedential value, we cite these unpublished opinions pursuant to the authority of Kentucky Rules of Civil Procedure (CR) 76.28(4)(c). We reference these unpublished opinions because we have found no published decisions on point, nor have we been cited to any; they show the progression of the law; and, they show the consistency of our analysis with other panels of this Court.

the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Bearden*, 461 U.S. at 672–73, 103 S.Ct. at 2073.[5]

■ As explained by our Supreme Court in *Marshall*, the requirements of *Bearden* "apply to motions for probation revocation for failure to comply with conditions requiring payment of child support." *Id.*, 345 S.W.3d at 829. The Court went on to clarify the protocol for conducting a revocation hearing:

As with all probation revocation hearings, the Commonwealth has the burden of proving a probation violation by a preponderance of the evidence. But if the Commonwealth has shown that payment conditions were violated by the defendant's failure to make the required payments, the probationer bears the burden of persuading the trial court that he made bona fide efforts to comply with payment conditions but was unable to do so through no fault of his own. The trial court must afford the probationer an opportunity to present evidence of reasons for nonpayment but may focus consideration on post-plea changes if defendant entered a guilty plea to flagrant nonsupport, particularly where he agreed to make payments under a plea agreement. *The trial court must specifically find whether the probationer made sufficient bona fide efforts to comply with payment obligations. If so, the trial court must then consider whether alternative measures might accomplish interests in punishment and deterrence or if imprisonment is necessary to accomplish these objectives.*

*Id.*, 345 S.W.3d at 834 (footnotes omitted; emphasis added).

Shane argues he was unable to comply with the trial court's order through no fault of his own because, despite searching for a job every week, an expired DVO prevented him from passing the criminal background check for employment. However, after the passage of time, the DVO did not prevent him from being hired by Wal–Mart in April 2010. He argues the trial court erred in imprisoning him for his debt because his failure to pay child support was neither willful nor fraudulent.

Shane is mistaken. At the hearing held on May 28, 2008, he admitted to being in contempt of the trial court's order to pay child support and was sentenced on June 13, 2008, to serve 180 days for being in contempt. The time to seek a purge amount was at the imposition of the sentence for contempt on June 13, 2008, not almost two years later when he had violated the agreed terms of conditional discharge.

5. In *Marshall*, 345 S.W.3d at 824 fn. 1, our Supreme Court clarified that *Bearden*, dealing with probation revocation, is equally applicable to revocation of conditional discharge.

Contrary to Shane's argument, the finding of a violation of the terms of conditional discharge was not a finding of additional contempt requiring the setting of a purge amount, but simply the trial court's enforcing its previously entered order. Shane could have avoided home incarceration by simply obeying the trial court's payment order, but he did not. *Dunagan v. Commonwealth*, 31 S.W.3d 928, 930 (Ky.2000) (no double jeopardy violation occurred where defendant was indicted for flagrant non-support after being held in contempt for failure to pay child support for the same time frame). After hearing the evidence, including Shane's own testimony that while working he chose to provide for the three children he had with his girlfriend rather than provide for the child he had with his ex-wife, the trial court deemed Shane's failure to comply with the terms of conditional discharge as willful noncompliance—a fact supported by the videotaped record.

While we do not grant relief to Shane for the reason he argued, that being the absence of a purge amount, we must nevertheless reverse and remand for further proceedings on the strength of *Marshall*, which directs:

[o]n remand, the trial court is directed to find whether each defendant made sufficient bona fide attempts to make payments but was unable to make the required payments through no fault of his own and, if so, whether alternative punishment might accomplish the Commonwealth's punishment and deterrence objectives. *The trial court must specifically identify the evidence it relies upon in making these determinations on the record, as well as the specific reason(s) for revoking probation on the record.* Although we indicated in [*Commonwealth v.*] *Alleman* [, 306 S.W.3d 484 (Ky.2010) ] that such findings do not

necessarily have to be in writing, *we hold that the trial court must make such findings specifically on the record.* It is not enough that an appellate court might find some evidence in the record to support a reason for revoking probation by reviewing the whole record. Stating "general conclusory reasons" for revoking probation is not enough, as we recognized in *Alleman.*

*Marshall*, 345 S.W.3d at 833 (emphasis added). Although not argued by either party, the trial court's written order revoking Shane's conditional discharge did not contain specific findings, and the trial court's comments from the bench do not satisfy the specificity requirement emphasized in *Marshall*. While the trial court specifically asked Shane about his income and his reasons for not working before finding a violation, the trial court never made a specific finding that Shane did not try to remain current in his child support obligation through his own fault, nor that his noncompliance with the court's prior order was willful. Further, the trial court never summarized the evidence supporting its partial revocation of Shane's conditionally discharged sentence. Such findings, with citation to supporting evidence, are express requirements under *Marshall.*

For the foregoing reasons, the Kenton Circuit Court orders of June 9, 2010, and June 28, 2010, partially revoking Shane's conditional discharge, is REVERSED AND REMANDED for specific findings consistent with this opinion and the *Marshall* decision cited herein. Though the trial court erred in failing to set a purge amount or action upon finding Schaffeld in contempt on June 13, 2008, that issue was not properly preserved before the trial court and we can provide no relief despite the trial court's clear error.

CAPERTON, Judge, concurs.

COMBS, Judge, concurs and files separate opinion.

COMBS, Judge, concurring:

Although the majority opinion reaches a correct result, I concur separately because I believe that we as an appellate court can provide relief as to a trial court's error even though that alleged error may not have been preserved by timely objection or otherwise.

This case involves a palpable error concerning the issue of setting a purge amount. Just as our criminal rules permit a court to correct, *sua sponte*, a palpable error resulting in manifest injustice to a party (RCr 10.26), so do our civil rules of practice permit us to address a palpable error despite preservation problems. CR 61.02 provides as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on a motion for a new trial **or by an appellate court on appeal, even though insufficiently raised or preserved for review,** and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

(Emphasis added.)

In our process of review, we are circumscribed only by the requirement that we adhere to the record—neither adding to nor subtracting from what is provided to us from the trial court. Within the confines of that record, however, we are at liberty—indeed obligated—to correct errors involving the substantial rights of the parties—regardless of technical compliance with the rules of practice.

I would hope that we always aspire to upholding the spirit of the law whenever adherence to the literal letter of the rules might stifle that spirit, which was intended to be served and fostered by the rules.

Therefore, I would have directly addressed the issue of the purge amount, which is the heart of this case.