B.H., a child under eighteen, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000254–DG

Supreme Court of Kentucky.

RENDERED: MARCH 17, 2016

MODIFIED: APRIL 13, 2016

AS MODIFIED ON REHEARING: AUGUST 25, 2016

COUNSEL FOR APPELLANT: Jonathan Lee Wampler, Assistant Public Advocate, Department of Public Advocacy, 100 Fair Oaks Lane, Suite 302, Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, 1024 Capital Center Drive, Frankfort, Kentucky 40601–8204

COUNSEL FOR AMICUS CURIAE, JUVENILE LAW CENTER; AND CHILDREN'S LAW CENTER: Rebecca Ballard Diloreto, Children's Law Center, Inc., 1555 Georgetown Road, Lexington, Kentucky 40511, Marsha L. Levick, Juvenile Law Center, Philadelphia Building,

1315 Walnut Street, Philadelphia, Pennsylvania 19107

## OPINION OF THE COURT
## BY JUSTICE NOBLE

The juvenile Appellant in this case, "Bill,"[1] was charged with multiple public offenses based on his sexual conduct with his also-underage girlfriend, who was not charged. He entered an unconditional admission to amended charges, and the district court entered an adjudication finding that he committed the alleged conduct. After disposition of his case, he appealed to the circuit court, which affirmed. The Court of Appeals denied his motion for discretionary review. This Court granted discretionary review, initially to address constitutional challenges that Bill has now raised. This Court concludes that the appeal should have been dismissed by the circuit court, with no consideration of any of the substantive issues raised, because Bill entered an unconditional admission to the offenses and thereby waived an appeal in this case.[2]

## I. Background

Bill, an eighth-grade boy, age 15, and Carol, a seventh-grade girl, age 13, had been boyfriend and girlfriend for about 18 months when they had sexual relations on two occasions. Bill also sent two nude pictures of himself to Carol with his cell phone, and she sent one nude picture of herself back to his phone. Carol's parents found the nude pictures on her phone, and learned from Carol who was in the photos and what had been transpiring between them. Her parents filed a complaint with the juvenile authorities.

When Bill was questioned, he admitted to the conduct, and the nude picture of Carol was found on his phone. This resulted in Bill being charged with misdemeanor sexual misconduct and felony possession of matter portraying a sexual performance by a minor. Carol was not charged with any offense.

In exchange for entering a "guilty plea," the felony charge against Bill was to be amended to a misdemeanor (criminal attempt). This agreement was significant to Bill, because if he were found to have committed the felony-level public offense, he would have been automatically classified as a juvenile sexual offender, KRS 635.510(1), and thus committed to the Department of Juvenile Justice (DJJ) for treatment, KRS 635.515(1). This commitment removes the juvenile from his home and places him in a juvenile detention facility. By entering the plea agreement amending the felony charge to a misdemeanor charge, Bill avoided *mandatory* juvenile sexual-offender treatment because his classification as a juvenile sexual offender was not automatic. KRS 635.510(2).

Even though juvenile sexual offender status is not mandatory for misdemeanor sexual offenses, the trial court nevertheless retains discretion to classify the juvenile as a juvenile sexual offender, which requires treatment, if such is in the child's best interest. *Id.* The trial court ordered a sex offender evaluation of Bill, as required by KRS 635.510(3), and after review of the report, found that sexual offender treatment was in Bill's best inter-

---

1. As per our usual practice in juvenile cases, we refer to the juveniles by pseudonyms.

2. We note that, in his appeal to the circuit court, Bill raised issues regarding the district court's disposition. The circuit court affirmed the district court's disposition, and, because Bill did not appeal his disposition, the circuit court's opinion and order in that regard is now final. We do not address any issues related to disposition herein.

est. He was removed from his home and placed with DJJ for the duration of the treatment program.

Bill then filed an appeal with the circuit court, which affirmed the district court. The Court of Appeals denied Bill's motion for discretionary review. Bill appealed to this Court. This Court granted discretionary review to address claims of selective prosecution and disparate treatment as applied under these facts. However, because the record indicates that Bill entered what amounts to an unconditional guilty plea knowingly, intelligently, and voluntarily, he waived his right to appeal, and thus no appeal on the issues raised is properly before this or any other court.

## II. Analysis

■ First, it must be acknowledged that even though a juvenile commits an offense that would be a crime if committed by an adult, under our juvenile justice system, that act is only a *public offense,* not a *crime. Q.M. v. Commonwealth,* 459 S.W.3d 360, 365 (Ky.2015). But because public offenses are the very same acts that would be crimes if committed by an adult, criminal-law terminology has long been used in juvenile cases. For example, a juvenile is *charged* with a public offense; he or she may be placed on *probation;* or, as many courts describe it, the juvenile may enter a *guilty plea.* None of these terms have precisely the same meaning they have in the adult criminal arena. More importantly, many of those terms are technically inapplicable to juvenile cases, and are used in place of more technical terms because they are more familiar.

Juveniles are not given all of the same procedural protections that are given to an adult charged with a crime. Most notably, juveniles do not have the right to a trial by jury. *See* KRS 610.070(1) (requiring juvenile hearings to be without a jury);

*McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (finding no constitutional right to a jury trial). Juvenile proceedings are confidential, *e.g.,* KRS 310.070(2) (barring the general public from juvenile hearings), while an adult is entitled to a public trial. At that same time, juveniles are not considered convicted felons. *See* KRS 635.040 (declaring that juvenile adjudications shall not be deemed "convictions").

■ Despite the obvious differences, however, and despite the treatment aspect of dispositions of juvenile cases, certain fundamental rights, such as those involving due process of law, apply equally to juveniles and adults, although the processes used to allow these rights vary significantly. *In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

In a juvenile proceeding, the juvenile is charged with committing an offense that would otherwise be a misdemeanor or felony crime if committed by an adult. Several processes intervene before the case is completed. The juvenile may be placed in diversion, KRS 610.030, which is mandatory for many offenses. There may be court monitoring of treatment programs the juvenile is ordered to attend. The case may be informally adjusted. KRS 610.015. But if the juvenile reaches the final stage of the case, he will have a formal proceeding to determine the truth or falsity of the allegations, with a hearing before the court, not a jury trial. KRS 610.060. If the court determines the allegations are true, it enters an adjudication, not a judgment of conviction. *See* KRS 635.040 (describing the court's judgment as an "adjudication" and expressly stating it is not a conviction). The juvenile will then have a separate disposition hearing, not a sentencing. KRS 610.080; KRS 635.060.

At the formal adjudication hearing, the juvenile may have a bench trial to determine whether he committed the charged offense or a lesser included offense. KRS 610.080(1). Or he may enter an *admission*, *id*.[3] the juvenile equivalent of the adult guilty plea. It is important to note that juveniles, outside the context of youthful-offender proceedings,[4] do not actually enter guilty pleas, as they are not convicted of crimes. Instead, they may admit the allegations in the petition, and thereby be bound as an adult would be in entering a guilty plea. Though Bill's act in court has been called a guilty plea at many points in this case, he actually made an admission. An admission may then be used by the court as the basis for entering an adjudication—the judgment in the juvenile public-offender case—just as a guilty plea is the basis for a judgment of conviction in an adult criminal case.

The admission in this case was agreed upon between the County Attorney and the juvenile and his attorney. As noted above, this was a bargained-for result: the offense charged at the felony level was amended to a misdemeanor-level offense, which meant Bill was not automatically classified as a juvenile sexual offender. His agreement provided him the opportunity to convince the trial court that he did not need to be committed for sexual-offender treatment, which would involve placement outside his home in a DJJ facility. And, while the agreement to admit the allegations in the (amended) petition gave

Bill something of value (including not having a felony on his juvenile record), he could not be coerced into the admission, nor could he be misled into doing so. In short, because of the consequences of a confession and admission, Bill had the same right to make a knowing, intelligent, and voluntary waiver of his right to remain silent as an adult charged with a crime.

To ensure this, courts must engage in what has become known as the *Boykin* colloquy, just as with criminally charged adults. *See D.R. v. Commonwealth*, 64 S.W.3d 292, 294 n. 2 (Ky.App.2001) ("We think it beyond controversy that *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) applies to juvenile adjudications."); *see also Kozak v. Commonwealth*, 279 S.W.3d 129, 134 (Ky.2008) (requiring that youthful offender be apprised of rights and consequences of guilty plea). This process consists, among other things, of informing the juvenile of various rights that he has and will be waiving if he admits the allegations, and asking whether he wishes to give up those rights.

Here, the trial court conducted an exemplary *Boykin* inquiry, as follows:

Judge: Have you had a chance to talk to your attorney, Ms. Wilke, about this matter?

Juvenile: Yes.

Judge: And is this what you want to do?

Juvenile: Yes.

---

3. KRS 610.080 actually refers to "an admission or confession of the child." There does not appear to be a substantial difference between the two. They are clearly offered as alternatives to the term *plea*. This opinion uses *admission*, rather than *confession*, to refer to the means by which a juvenile may admit the truth of the allegations in the petition. The single term is simpler and does not raise the possibility of confusion with an out-of-court confession.

4. Juveniles may enter guilty pleas in youthful offender cases, that is, cases where they are tried as adults under KRS Chapter 640. That chapter, however, is applicable only to youthful offenders, and thus not to this case or, for that matter, to any case involving only status or public offenders.

Judge: Has she gone over with you the—

Wilke: I haven't filled out the rights [inaudible]. We've talked about what he'd be waiving. Do you want to discuss them on the record and I can check them off, or do you want me—

Judge: Yeah. We will talk about them on the record. And then [Bill] as we go through each of these, if any of these you have questions about or don't understand what I'm saying, just stop me, we'll explain it a little better. If it seems like I'm going too fast and you're not following me, just let me know and we'll slow down and we'll explain it. Your attorney advises me that she has discussed these rights with you, but I want to go over them with you, these rights as well, and make sure you understand what you waive by pleading guilty. Now the County has indicated that it is going to amend the charges to criminal trespass in the third degree, sexual misconduct, and criminal attempt to possess matter portraying a sexual performance by a minor. Those are all three misdemeanor offenses or violations.

Prosecutor: One violation. Two misdemeanors.

Judge: Do you understand you have the right to be represented by an attorney?

Juvenile: Yes.

Judge: Actually, I don't have to fill this out; you're doing that. [Referring to a check-off form listing the juvenile's rights.] Do you understand the charges against you?

Juvenile: Yes, ma'am.

Judge: Do you know you have the right to a trial before this court?

Juvenile: Yes, ma'am.

Judge: Do you know you have the right to remain silent, or you could testify?

Juvenile: Yes, ma'am.

Judge: Do you realize that by pleading guilty you are giving up your right to appeal?

Juvenile: Yes, ma'am.

Judge: Do you know you have the right to question witnesses against you and subpoena witnesses and evidence on your own behalf?

Juvenile: Yes, ma'am.

Judge: Are you presently under the influence of any alcohol, drugs, or narcotics?

Juvenile: No, ma'am.

Judge: Are you now being treated or have you been treated for a mental illness that would affect these charges or affect your understanding of what's going on today?

Juvenile: No, ma'am.

Judge: Has anyone threatened or coerced you to plead guilty or promised you anything to make you plead guilty?

Juvenile: No, ma'am.

Judge: Are you asking the Court to enter a plea of guilty voluntarily and of your own free will?

Juvenile: Yes, ma'am.

Judge: Are you admitting to this court your guilt on the charges of criminal trespass third degree, sexual misconduct, and criminal attempt to possess matter portraying a sex performance by a minor?

Juvenile: Yes.

Judge: Are you pleading guilty to those charges?

Juvenile: Yes, ma'am.

Judge: Do you understand that if you are convicted after today that your record can be held against you, some

offenses may be held against you even after you turn eighteen? Your record does not automatically seal and some offenses are required to be reportable to the school? I don't think any of these are reportable to the school. But do you understand that?

Bill's mother: May I ask a question?

Judge: Sure.

Bill's mother: And we talked about if it were the other charge. What would these charges, as far as when—

Judge: After eighteen?

Bill's mother: Yes.

Judge: The after-eighteen part applies to if you are convicted of an offense that requires an evaluation like a felony offense as an adult. They can go back, not just your adult record, but your juvenile record. Now I don't think misdemeanor juveniles can be considered as a part of that, just felonies. So the fact of this being amended to the felony kind of takes that out of play—I meant from a felony to a misdemeanor takes that out of play. That's no longer true for these charges.

Bill's mother: So nobody can get into that, and as far as a juvenile, technically nobody's supposed to know anything about these charges.

Judge: In so far as the court can guarantee. Now I can't tell the victim's parents—what they choose to say or do, I can't control that. The law doesn't say that I can order them to not say anything. It just says that—

Wilke: But in an official capacity—

Judge: In an official way, no.

Wilke: If he goes to apply for a job, they're not going to find out about that.

Judge: No, this doesn't, no. It is not even considered a criminal offense under the law.

Prosecutor: We're all bound not to disclose it, but we can't control what [inaudible].

Judge: Right. Third party. Yeah.

Prosecutor: Or what they may say. We are all bound by confidentiality.

Judge: Any other questions?

There were, apparently, no other questions, and the judge set the matter for a disposition hearing. In addition to the oral colloquy, as Bill answered the questions, his counsel checked his answers off on a printed form, which listed each right he was agreeing to waive. At the end of the inquiry, he and his counsel signed the form.

During the inquiry, the judge asked the general questions about whether Bill understood the charges against him, and the consequences of his admission. He responded clearly that he did. Specifically, the judge asked whether he understood that there would be no appeal from his "guilty plea," and he clearly responded that he understood. Moreover, his *attorney* stood by and acquiesced in the admission, having negotiated the agreement for Bill. Both Bill and the attorney were clearly informed that there would be no appeal.

Subsequently, after reviewing an evaluation of Bill regarding his need for sex-offender treatment, the trial court exercised her discretion and found that Bill should be classified as a juvenile sexual offender in need of treatment, and committed him to DJJ, which placed him out of his home in a DJJ facility. At that point, Bill's lawyer filed a notice of appeal with the circuit court.

There are very real and important questions about whether prosecuting Bill and not prosecuting Carol, if the two juveniles

are similarly situated, constitutes impermissible unconstitutional disparate treatment. There is the. very real question of whether the two juveniles were actually similarly situated or not. Certainly this case raises questions of public debate about whether male and female sexual offenders face a double standard. There is also an interesting discussion about whether a child who is incapable of consenting to certain conduct can be guilty of committing that conduct on another child also incapable of consenting to the conduct. But none of these questions can be answered in this case because this is not a proper appeal of the district court's disposition of this juvenile case.

Bill did not ask to *conditionally* admit to the allegations against him, thereby reserving appeal of any legal issues. Instead, he entered an unconditional admission, and indicated that he understood there would be no appeal. It is longstanding law that no defenses can be raised on appeal after entry of a guilty plea, except that no offense has been charged. *Commonwealth v. Elza,* 284 S.W.3d 118 (Ky. 2009). The effect of the guilty plea is to waive those other defenses and any appeal that seeks to raise them. Juveniles, of course, are not held to the same level of competency as adults, simply as a matter of law. Nevertheless, they may waive their rights in juvenile proceedings. *See Commonwealth v. B.J.,* 241 S.W.3d 324, 327 (Ky.2007) (holding that juveniles may waive constitutional rights); *Kozak v. Commonwealth,* 279 S.W.3d 129, 133 .(Ky. 2008) ("[A] juvenile may, by the express terms of a plea agreement, validly waive his rights under the juvenile code. . . ."). Thus, a juvenile may waive his right to an appeal.

■ Although a juvenile does not enter a guilty plea, as explained above, his admission to the allegations in the petition has much of the same effect as such a plea. That effect includes barring any appeal, other than one claiming that no offense has been charged, unless the admission is conditioned on the juvenile's being able to appeal.

■ Again, Bill's admission was not conditional. And he has not alleged that the petition against him charged no offense. He claims only that the charges were unconstitutionally applied to him and not to Carol, and that the statutes as written are so vague that they do not convey the legislature's clear intent in factual scenarios such as this one. Those claims, and the right to appeal them, were necessarily waived when Bill entered an unconditional admission to the amended charges.

This issue was raised by the Commonwealth, but the brief for the Commonwealth appears to muddle the notion of waiver with the notion of preservation. As the Commonwealth points out, Bill admits that he did not preserve the issues he has raised in his appeals and asks for palpable error review. The preservation issue completely misses the point. Preservation is immaterial if there can be *no* appeal of a case. Waiver of the right to appeal differs starkly from simply failing to make a proper evidentiary or legal objection. Waiving an evidentiary error may result in that error not being considered on appeal, but waiver of making any defense by admitting guilt, or an unconditional admission, prevents *any* appeal of the claims that are before us.

### III. Conclusion

Consequently, this Court cannot reach the merits of any of Bill's claims raised here because there is no proper appeal before this Court, nor has any appeal of those claims below been appropriate. Having entered into his admission unconditionally, and indicating that he did so

knowingly, intelligently, and voluntarily, with his attorney present and encouraging his plea, Bill has waived his right to this appeal. The lower court should not have considered his claims. For this reason, that portion of the decision of the circuit court that affirmed the Woodford District Court's adjudication in this matter is vacated, and this matter is remanded to the circuit court with directions that the appeal be dismissed. The adjudication and disposition made by the Woodford District Court stand as the final orders in this case.

All sitting. All concur. Cunningham, J., also concurs by separate opinion in which Minton, C.J., and Venters, J., join.

## CUNNINGHAM, J., CONCURRING:

I cannot fault the typically adept analysis and writing of Justice Noble. I only write to express two agonizing concerns that haunt me about this case.

First, almost five years ago, 15 year old Bill entered a guilty plea in this case. He is now 20 years old. This case has wound through the entanglement of our court system for years. Numerous appeals have been made and untold hours of legal attention by lawyers and judges. And not until the case was briefed for this court was the appeal ever challenged because of the guilty plea. Alas, the case ends without resolution of the issues but because there should never have been an appeal allowed in the first place. This should have never happened.

My more troublesome concern deals with the selective prosecution in this case.

Shakespeare's literary classic of "Romeo and Juliet" comes down to us through the ages as a beautifully told and dramatized love story. Surely the tawdry details of this case do not match the elevated theme of that play. Yet, I cannot help but wonder what would have happened if instead of the two competing families brawling in the streets of Verona, Mr. Capulet would have beaten Mr. Montague to the courthouse to file a criminal complaint against Romeo for sexual misconduct. Reading Shakespeare's enchanting tragedy, none of us would fault Romeo more than Juliet.

But in this case, that appears to be exactly what has happened.

In an attempt to be fair, I've searched the entire record of this criminal prosecution to uncover an acceptable reason for selecting to prosecute Bill and not Carol. Both were children moving through the transforming years of puberty and adolescence. Bill was only 15, Carol just two years younger.

Apparently Carol comes from a conventional home where parents are still together. Bill, on the other hand, lives with a single mom and his sister. There is evidence that he has been scarred by the experience of his father abandoning his mother for another woman. His juvenile record is not spotless. Though troublesome, none of his prior bad acts were violent. The "Juvenile Sex Offender Evaluation" in the record reflects that Bill is a normal, male teenager without any signs of "deviant sexual arousal . . . no sex offender pathology appears present." The crimes before us were not impulsive. He and Carol were engaged in over a year long romantic relationship. His previous indiscretions provide a sound rationale for disparity of disposition in the cases of these two teenagers. They do not give reason to ignore the culpability of Carol altogether.

I note unequal consideration of these two young people in some of the rhetoric of the prosecution. In the response to the motion to stay disposition pending appeal, the prosecutor objects and claims that "sex offenses are about as serious as any crime can be short of murder." While I question

the elevation of the inappropriate and immoral behavior of these two teens as being almost as bad as killing someone, my main objection is ignoring the equal involvement and culpability of one of the partners.

The prosecution goes on in the dispositional hearing. "I do not think, maybe I'm old, and maybe I'm a prude that it can be downplayed to natural teen love, I don't think, even in this day and age, it's natural for thirteen and fourteen-year-olds to be sending naked photographs of themselves and having sexual relations."

Nothing wrong with that notion. But apparently such scruples only apply to young boys such as Bill, and not to young girls such as Carol. Or maybe the moral and criminal responsibility of one is absolved when one set of parents beat the other set of parents down to the courthouse. A race for absolution.

The calendar years separating these two young people are meager. The small difference diminishes even further, and even disappears, when we consider reality. New Castle University Scientist conducted a study uncovering that the female brain matures faster and earlier than the male brain. This study, which was published in the Cerebral Cortex Journal, focused on the brain network, which reorganizes connections throughout life to improve efficiency. While both genders go through the same process of reorganization, the female brain begins reorganizing its connections at a younger age than males and at a faster pace.[5]

Females not only mature faster than males mentally, but also physically. "For girls, puberty begins around 10 or 11 years of age and ends around age 16. Boys enter puberty later than girls—usually around 12 years of age—and it lasts until around age 16 or 17."[6]

By her own statement, Carol hosted these sexual encounters at her own home when her parents were not there. Bill's mom knew that he was having sex. Apparently she did nothing, yet is held, blameless under this action. Seems like plenty of blame here to go around. But, it all settles on then 15 year old Bill.

The main purpose of the juvenile court system is to guide young offenders out of the error of their ways and onto the solid road to responsibility and law abiding citizenship. The success of these attempts depends a great deal on instilling respect in these young minds for themselves and for others. That begins with respect for the law and our justice system. It is highly doubtful that young Bill has gained much respect of the court system from being singled out alone for charges in this case. His partner in crime totally disappeared off the radar screen almost as soon as her parents showed up at the courthouse.

On the Circuit Courtroom wall in the fair city of Princeton, Kentucky, are inscribed these words. "In this court room, the scepter of the prince and the staff of the beggar lay side by side."

5. Cheol E. Han, Peter Uhlhaas & Marcus Kaiser, *Preferential Detachment During Human Brain Development: Age– and Sex–Specific Structural Connectivity in Diffusion Tensor Imaging (DTI) Data*, Cerebral Cortex, (Dec. 15, 2013) (*retrieved at* http://cercor.oxford journals.org/content/early/2013/12/13/cercor. bht333.abstract?sid=676604c7-354f-4539-95f 5-fc7f040ab1b5).

6. *Teenage Growth & Development: 11 to 14 Years, Palo Alto Medical Foundation*, (August, 2013) (*retrieved at* http://www.pamf.org/ parenting-teens/health/growth-development/ pre-growth.html).

Were it true in this case, it would not be so difficult for me to concur, as I reluctantly do.

Minton, C.J., and Venters, J., join.

