JONES, JUDGE:
The Appellant, C.S., a juvenile, appeals an order from the Breathitt Family Court holding her in contempt of court. Having reviewed the record in conjunction with applicable legal authority, we reverse. C.S. was not properly charged with contempt. C.S. was originally charged with the status offense of being a habitual runaway. Having thoroughly reviewed the record, we are unable to locate any valid court order entered as part of the status offense case regulating C.S.'s future conduct. See KRS 1 600.020(69) (defining a valid court order). A court may only hold a child in contempt of court to enforce a valid court order previously issued by the court. KRS 610.010(11). It is manifestly unjust to subject a juvenile to sanctions for contempt, especially confinement in a detention facility, when the status offense case against her was effectively terminated without the entry of a valid written order regulating her future conduct. Additionally, the *861 Breathitt Family Court found that C.S. committed "the public offense" of contempt of court even though the Juvenile Code is clear that contempt of court is not a public offense.
I. BACKGROUND
The Appellant, C.S., ran away from her foster home in Hazard, Kentucky, on October 27, 2015, and was found on November 5, 2015. The next day, C.S. ran away again after a forensic interview at the Care Cottage in Hazard, Kentucky. As a result, it was alleged in a complaint/petition to the Perry District Court dated November 9, 2015, that C.S. was a habitual runaway in violation of KRS 630.020(1). (R. at 1). Billie Maggard, a court designated worker/specialist completed a preliminary inquiry formal/informal processing criteria and recommendations form. (R. at 2). Ms. Maggard determined that C.S.'s case was not appropriate for informal processing and recommended that C.S.'s case be referred to the Perry County Attorney for adjudication. Id. She also noted that the Perry District Court had detained C.S. pending a detention hearing. Id. A different court designated worker/specialist, Michael Waters, completed a pre-adjudicative detention criteria form. (R. at 3). Mr. Waters noted that C.S. was found "absent without leave from a secure or non-secure facility." Id. Mr. Waters also included a handwritten notation on the form indicating that, at the time she was found, C.S. was already in the Cabinet's custody, having been previously removed from her parents' custody. Id. Mr. Waters stated that while C.S. did "not meet the criteria for detention," the Trial Commissioner had ordered C.S. detained because she was a "danger to herself." Id.
A pre-adjudication detention and arraignment hearing was held on November 24, 2015, before the Perry District Court. (R. at 7). C.S. was present at the hearing with counsel. Id. At the time of the hearing, C.S. was in custody and was being detained by the Perry County Sheriff's Office. Id. Most of the conversation at the hearing centered on an appropriate pre-adjudication placement for C.S. The parties informed the Perry District Court that C.S. had already been committed to the Cabinet's custody. After some discussion, it was decided that C.S. would be released from Perry County's custody and returned to the Cabinet's custody. At this point, the Perry District Court asked the parties if the next step was to set a date for formal adjudication/disposition on the runaway status offense charge. Counsel indicated that it might not be necessary to even adjudicate the charge "if the placement works out." Counsel then reminded the Perry District Court that a court date was already set in the Dependency, Neglect, and Abuse ("DNA") case regarding C.S. and her parents. Ultimately, the parties and Perry District Court agreed to set C.S.'s juvenile status offense case for a review on the same date as the DNA review was scheduled to take place, that is, February 24, 2016. Following the arraignment/detention hearing, the Perry District Court entered an order. The order provides as follows:
Juvenile present-RBCCurrent incarceratedAlready committed to the Cabinet.-Per DCBS child to be placed w/ Sunshine in Morehead until placement can be made @ Ramey Estep or similar-Review on 2-24-16 @ 9 AM-Sheriffs to transport juvenile to placement as they retain custody-DAC report entered in file
Id.
It does not appear that the Perry District Court ever held the scheduled review hearing. Apparently, C.S.'s father relocated *862 to Breathitt County.[2] On March 9, 2016, the Breathitt County Attorney moved the Breathitt Family Court to set a review on March 16, 2016. (R. at 9). Following the review, the Breathitt Family Court ordered C.S.'s juvenile status offense case to be transferred from the Perry District Court to the Breathitt Family Court so that the status offense case could proceed before the same court as the DNA case. (R. at 11). The Breathitt Family Court then appointed a public advocate to represent C.S. in the juvenile case and a guardian ad litem to represent her interests in the DNA case. Id. The Breathitt Family Court also appointed separate counsel to represent C.S.'s parents in the DNA case. Id.
On April 21, 2016, Sunrise Children's Services filed a report with the Breathitt Family Court regarding C.S. (R. at 12-14). The report indicated that C.S. was placed with Sunrise Children's Services in November 2015 and was scheduled to be returned to her parents on May 24, 2016. (R. at 12). The Cabinet also filed an update with the Breathitt Family Court regarding C.S. (R. at 15-16). It provides as follows:
[C.S.] is currently placed at Sunrise Children's Services in Morehead. [C.S.] is having behavior issues and is still currently an AWOL risk. Parents live in Breathitt County and have stated they want to work with DCBS to regain custody of [C.S.]. Parents have custody of an infant son and have another child placed in the permanent custody of a relative. Mother is currently expecting another child on Aug. 5th 2016.
(R. at 16).
The Breathitt Family Court conducted a review hearing on May 18, 2016. (R. at 25). As part of the hearing, the Breathitt Family Court ordered C.S. to remain in the Cabinet's temporary custody and complete the program at Sunrise Children's Services. Id. The Breathitt Family Court included a notation in its order that continuance of the placement was in C.S.'s "best interest as she is not at risk of physical injury or abuse." Id. Another review hearing was scheduled for July 20, 2016. Id.
Prior to the hearing, Sunrise Children's Services filed a report with the Breathitt Family Court. (R. at 26-31). Therein, Emily Rice McClain, the Chief Clinician, noted that C.S. had completed the program requirements and recommended that "a therapeutic foster home" be located for C.S. in the event C.S.'s parents did not complete their case plan with the Cabinet. (R. at 31). The Breathitt Family Court accepted the recommendations and ordered another review hearing to take place on September 21, 2016. (R. at 32).
At the September 21, 2016 hearing, it was noted that C.S. had been released from Sunrise Children's Services and placed in a foster home where she was "doing well." (R. at 33). However, C.S.'s parents had failed to complete their case plans with the Cabinet. Id. The Cabinet noted that it was going to give C.S.'s parents three more months to complete their case plans before moving to change C.S.'s permanency goal from reunification to adoption. Id. The order entered on September 22, 2016, which followed this status review hearing, notes that C.S.'s public advocate agreed that C.S. was doing well and that "no further action is needed in this status case." Id. This order is the last order entered in the underlying status offense case.
For the next few months the record was dormant. However, on November 28, 2016, the Breathitt County Attorney filed a "motion *863 to hold juvenile in contempt for violation of conditions of release." (R. at 36). The motion was accompanied by the affidavit of Devon Haddix, a Breathitt County social worker. (R. at 36-39). According to the affidavit, C.S. "was placed on probation/conditions of release on September 22, 2016, in Breathitt District/Family Court" and broke those conditions by "running away from foster home on November 23, 2016 and remaining absent." (R. at 38). The next day, on November 29, 2016, an order to take C.S. into custody was entered, directing all peace officers in the Commonwealth to take C.S. into custody and to deliver her to the Breathitt County Detention Center. (R. at 34). The order states that it was entered in response to a petition made by Andrea Hall, Perry County social worker, which charged C.S. with being a habitual runaway. Id.
C.S. was eventually apprehended and brought before Breathitt Family Court for a hearing on January 3, 2017.[3] (R. at 39-40). The Breathitt Family Court's order notes that the court "read the contempt allegations against [C.S.] alleging that she was placed on conditions of release imposed by the Perry District Court and the Breathitt Family Court and she violated her probation/conditions of release by running away from her foster home on 11-23-2016." (R. at 40). During the hearing, C.S. "knowingly, voluntarily, and understandingly admitted that she ran away from her foster home in violation of her conditions of release." Id. The Breathitt Family Court found C.S. in violation of her conditions of release and, therefore, in contempt of court. Id. The Breathitt Family Court ordered C.S. to be placed in the Breathitt County Detention Center until the Cabinet could find an alternative placement. Id. C.S.'s detention was not to exceed 35 days. Id.
Both C.S. and her attorney signed a notice of juvenile rights and consequences form. (R. at 41). A review hearing was scheduled for January 18, 2017. (R. at 40). The Breathitt Family Court then entered a separate order titled "pre-adjudicative court ordered terms public offense" in which C.S. was ordered to obey the law, not to consume any tobacco, illegal drugs, or alcohol, cooperate with anyone providing services, take only prescribed medications, and to have no contact with her foster father, Joshua Moore, who was being investigated for inappropriate contact with C.S. while she was in his care. (R. at 42). The Breathitt Family Court also entered a "juvenile detention order public offense " that states C.S. was being detained prior to placement pursuant to KRS 635.060(4)(c)(1), allowing her to be detained by the Department of Juvenile Justice up to 35 days prior to placement.[4] (R. at 44).
Immediately following that hearing, C.S. ran away from the Breathitt County Sheriff while being transported back to the Breathitt County Detention Center. As a result, the Commonwealth filed a second motion to hold C.S. in contempt of court. (R. at 45). On February 1, 2017, the Breathitt Family Court held a contempt hearing. (R. at 48-52). At that hearing, C.S. "knowingly, voluntarily, and understandingly" stipulated to running away from the Sheriff and to the contempt. (R. at 52). Once again, the Breathitt Family Court entered a public offense order against C.S. for the offense of contempt of court. (R. at 53). The order stated that C.S. committed *864 the public offense of "contempt of court when she fled the Breathitt County Sheriff on January 3, 2017." Id. The order further stated that C.S. was to be detained "at the Breathitt County Detention Center until such time as Breathitt County DCBS locates adequate placement; time period not to exceed six months." Id. Although the Cabinet was able to place C.S. at Maryhurst Home in Louisville, Kentucky, sometime before March 15, 2017, C.S. appealed the Breathitt Family Court's February 1, 2017 contempt order to this Court. (R. at 54, 59).
II. EFFECT OF C.S.'S ADMISSION
The order on appeal was entered after C.S. admitted to contempt as a public offense before the Breathitt Family Court. In B.H. v. Commonwealth , 494 S.W.3d 467, 473 (Ky. 2016), the Kentucky Supreme Court held that even though a juvenile does not technically enter a plea as would be the case in an adult criminal prosecution, a juvenile's admission to the allegations against her has "much of the same effect as such a plea." Id. "That effect includes barring any appeal, other than one claiming that no offense has been charged, unless the admission is conditioned on the juvenile's being able to appeal." Id. An unconditional admission waives the right to appeal. Waiver by admission/plea is not the same as the failure to preserve an argument before the trial court. In B.H. , the Court explained:
Preservation is immaterial if there can be no appeal of a case. Waiver of the right to appeal differs starkly from simply failing to make a proper evidentiary or legal objection. Waiving an evidentiary error may result in that error not being considered on appeal, but waiver of making any defense by admitting guilt, or an unconditional admission, prevents any appeal [other than one claiming that no offense has been charged].
Id.
C.S. candidly admitted that none of the issues raised by her on appeal were presented to the Breathitt Family Court. However, she failed to address the effect her admission to contempt as a public offense has on her ability to appeal. The only issue that C.S. can assert on appeal is that no offense was charged against her. While not articulated as precisely as it could have been, we believe this is the gist of C.S.'s argument. She asserts that neither the Perry District Court nor the Breathitt Family Court entered a valid court order imposing any conditions on her. The logical conclusion is that if no valid court order was entered, the Commonwealth and the Breathitt Family Court failed to properly charge C.S. with any contemptuous conduct. Stated more simply: if there is no valid order, there is no contempt.
III. MOOTNESS
Before we undertake this review, however, we must consider another preliminary issue-whether a case or controversy still exists. The Breathitt Family Court ordered C.S. to be detained in the Breathitt County Detention Center for up to six months. However, prior to the expiration of the six months, the Cabinet located an alternative placement for C.S. in Maryhurst Home. As a result, she was released from the Breathitt County Detention Center and returned to the Cabinet's custody. Technically speaking, the Breathitt Family Court's order has expired by its own terms.
"A case becomes moot as a result of a change in circumstances which vitiates the underlying vitality of the action." Newkirk v. Commonwealth , 505 S.W.3d 770, 774 (Ky. 2016) (quoting *865 Commonwealth v. Terrell , 464 S.W.3d 495, 498-99 (Ky. 2015) ). Generally, appellate courts dismiss appeals that have become moot. Louisville Transit Co. v. Dept. of Motor Transp. , 286 S.W.2d 536, 538 (Ky. 1956). However, "[a] technically moot issue may nonetheless be subject to appellate review under certain exceptions outlined in Morgan v. Getter , 441 S.W.3d 94, 99-100 (Ky. 2014)." Belt v. Commonwealth, Cabinet for Families and Children , 520 S.W.3d 406, 409 (Ky. App. 2017).
C.S. argues that review is appropriate because "this illegal disposition is capable of repetition yet evading review." Two elements must be present for the capable-of-repetition-yet-evading review exception to apply: (1) the challenged action must be too short in duration to be litigated to completion prior to its expiration; and (2) a reasonable expectation must exist that the same party will be subject to the same action again. Bevin v. Beshear , 526 S.W.3d 89, 90 (Ky. 2017). Both elements exist in this case. Contempt orders, especially ones involving juveniles, are often of very limited duration. In this case, even if C.S. had been detained for the entire six months allowed by the Breathitt Family Court, it would not have allowed adequate time for an appeal. Furthermore, C.S. is still a minor. It is entirely possible that she could be subject to another contempt proceeding. We can easily foresee the same issues arising again. Accordingly, we hold that the capable-of-repetition-yet-evading review exception applies to C.S.'s appeal. We will review the limited issue regarding whether C.S. was properly charged with contempt as a public offense. See Commonwealth, Dep't of Corrections v. Engle , 302 S.W.3d 60, 63 (Ky. 2010).
IV. STANDARD OF REVIEW
C.S. concedes that she did not preserve any of the issues she raises on appeal by bringing them to the attention of the Breathitt Family Court. We review unpreserved issues for palpable error. See R.S. v. Commonwealth , 423 S.W.3d 178 (Ky. 2014) (reviewing unpreserved issues in a juvenile matter for palpable error). "To establish palpable error, Appellant must show 'the probability of a different result or error so fundamental as to threaten his entitlement to due process of law.' " Huddleston v. Commonwealth , 542 S.W.3d 237, 245 (Ky. 2018) (quoting Brooks v. Commonwealth , 217 S.W.3d 219, 225 (Ky. 2007) ). "Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it sua sponte. " Lamb v. Commonwealth , 510 S.W.3d 316, 325 (Ky. 2017).
V. ANALYSIS
"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." Commonwealth v. Burge , 947 S.W.2d 805, 808 (Ky. 1996). Generally, contempt is classified as either civil or criminal in nature. Id. "Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant." Id. While a party may be jailed for civil contempt, the party is entitled to immediate release upon compliance with the court's order. Id. "Criminal contempt is conduct which amounts to obstruction of justice, and which tends to bring the court into disrepute." Schroering v. Hickman , 229 S.W.3d 591, 593 (Ky. App. 2007). If the purpose of the contempt sanction is to punish, we classify it as criminal contempt. Id.
Criminal contempt is either direct or indirect. Direct criminal contempt occurs in the presence of the court and may be punished summarily by the court. See Brockman v. Commonwealth , 185 S.W.3d 205, 208 (Ky. App. 2005). Indirect *866 criminal contempt occurs outside the presence of the court. Id. Punishment for indirect criminal contempt may be imposed only after "proceedings that comport with due process." Id. (quoting Commonwealth v. Pace , 15 S.W.3d 393, 395 (Ky. App. 2000) ). At a minimum a party alleged to have committed indirect criminal contempt must be: (1) advised of the charges; (2) provided with the assistance of counsel, if requested; and (3) allowed to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. Cooke v. United States , 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925).
The Juvenile Code allows for contempt orders. See KRS 600.060 ("Notwithstanding any other provision of KRS Chapter 600 to 645, the inherent contempt power of the court shall not be diminished, except that an order of detention for a child found in contempt shall not exceed thirty (30) days."). The power to issue contempt orders in juvenile cases "exists for the purpose of compelling the juvenile to comply with the court's orders and to enable the court to help the juvenile become a productive citizen." A.W. v. Commonwealth , 163 S.W.3d 4, 6-7 (Ky. 2005). Despite the non-criminal nature of juvenile proceedings, significant consequences and loss of liberty can result.[5] T.D. v. Commonwealth , 165 S.W.3d 480, 483 (Ky. App. 2005). Accordingly, a juvenile accused of being a status offender is entitled to due process similar to that required in a criminal prosecution. Id. Likewise, a juvenile is entitled to due process when she is brought before the court on charges of contempt. See A.C. v. Commonwealth , 314 S.W.3d 319, 329 (Ky. App. 2010).
Before an indirect criminal contempt sanction can issue, the court must find that the accused willfully violated a court order. Cabinet for Health and Family v. J.M.G. , 475 S.W.3d 600, 620 (Ky. 2015). For a violation to be willful, "the order or other source of the contemnor's duty be reasonably clear and specific." Id. The Juvenile Code explicitly incorporates this requirement. It provides that a court may hold "a child in contempt of court to enforce valid court orders previously issued by the court, subject to the requirements contained in KRS 610.265 and 630.080." KRS 610.010(11) (emphasis added). The Juvenile Code defines a valid court order as follows:
"Valid court order" means a court order issued by a judge to a child alleged or found to be a status offender:
(a) Who was brought before the court and made subject to the order;
(b) Whose future conduct was regulated by the order;
(c) Who was given written and verbal warning of the consequences of the violation of the order at the time the order was issued and whose attorney or parent or legal guardian was also provided with a written notice of the consequences of violation of the order, which notification is reflected in the record of the court proceedings; and
(d) Who received, before the issuance of the order, the full due process rights guaranteed by the Constitution of the United States[.]
KRS 600.020(69).
We have searched the record exhaustively for a "valid court order" in the *867 status offense case against C.S. There is no such order. The only order entered by the Perry District Court was the handwritten order entered immediately following the November 24, 2015 hearing. That order simply directed the Perry County Sheriff to transport C.S. to Sunshine Children's Services and set a review conference. The last order entered by the Breathitt Family Court in the status offense case is the order of September 22, 2016. That order simply stated C.S. was doing well and "and no further action is needed in this status case." (R. at 33). The original contempt motion filed by the Breathitt County Attorney was accompanied by an affidavit from Devon Haddix, a Breathitt County social worker. According to the affidavit, C.S. "was placed on probation/conditions of release on September 22, 2016, in Breathitt District/Family court" and broke those conditions by "running away from foster home on November 23, 2016 and remaining absent." However, nothing in the record indicates that any conditions were imposed on C.S. as part of this order. Likewise, there is nothing in the record that indicates C.S. received any notification that running away again could result in her being held in contempt of court. Since there was not a "valid court order" regulating C.S.'s conduct in place, she was not properly charged with contempt of court as part of either the first or second contempt proceeding. See M.A.M. v. Commonwealth , 402 S.W.3d 546, 556 (Ky. App. 2013).
The Commonwealth appears to recognize that the September 22, 2016 order does not meet the requirements of a valid court order. To this end, it asserts that the January 3, 2016 order imposed conditions on C.S. and constitutes a valid court order. Nothing in the record indicates that C.S. was charged with being in contempt of the January 3, 2016 order. Both the written and video record suggest that the September 22, 2016 order was the basis for both contempt charges against C.S. However, even if we were to accept the Commonwealth's argument, the fact remains that C.S. was charged and detained by the Breathitt Family Court for the "public offense" of contempt of court pursuant to KRS 635.060(4)(c)(1).[6] This was an improper charge and detention.
A "public offense action" is:
an action, excluding contempt , brought in the interest of a child who is accused of committing an offense under KRS Chapter 527 or a public offense which, if committed by an adult, would be a crime, whether the same is a felony, misdemeanor, or violation, other than an action alleging that a child sixteen (16) years of age or older has committed a motor vehicle offense[.]
KRS 600.020(51) (emphasis added). C.S. was originally charged with being a habitual runaway. "The offense of being a habitual runaway [ ] is a status offense pursuant to KRS 630.020(1)." T.A. v. Byer , 13 S.W.3d 629, 631 (Ky. 2000). And, as clearly set forth in KRS 600.020(51), a contempt action is not a public offense. "A contempt sanction in a contempt hearing for the violation of the court's order is certainly distinguishable from a sentence set at a dispositional hearing for a public offense." A.W. , 163 S.W.3d at 7. Additionally, the pre-disposition procedures and limitations on placement differ depending on whether the contempt of court charge is based on an underlying finding that the child is a *868 status offender or a public offender. KRS 635.010.
C.S. was charged with and admitted to having committed the "public offense of contempt of court." (R. at 53). And, she was detained as a juvenile public offender. This was improper because contempt of court is not a public offense.[7] Allowing a juvenile to admit to having committed a nonexistent public offense and detaining her as a public offender pursuant to KRS 635.060(4)(c)(1) is manifestly unjust. An error of this magnitude requires correction even though it was not preserved below.
Finally, we would be remiss if we did not observe that both contempt orders entered by the Breathitt Family Court ordered C.S. to be detained in the Breathitt Juvenile Detention Center for periods in excess of thirty days. Prior to July 1, 2015, the Juvenile Code permitted a court to detain a juvenile to any time period it saw fit. To this end, the previous version of KRS 600.060 provided: "Notwithstanding any other provision of KRS Chapter 600 to 645, the inherent contempt power of the court shall not be diminished." However, this statute was revised by the General Assembly and now provides: "Notwithstanding any other provision of KRS Chapter 600 to 645, the inherent contempt power of the court shall not be diminished, except that an order of detention for a child found in contempt shall not exceed thirty (30) days. " KRS 600.060 (emphasis added). The orders entered in this case violate KRS 600.060.[8]
*869 VI. CONCLUSION
Based on the foregoing, we reverse the Breathitt Family Court's order holding C.S. in contempt of court.
ALL CONCUR.

The record contains reports indicating that C.S.'s parents were living apart, with her father residing in Breathitt County and her mother residing in Floyd County. (R. at 15).

The hearing was actually conducted in Wolfe Circuit Court. (R. at 39).

As discussed in more detail in the analysis section of this Opinion, C.S. was never properly charged with committing any "public offense."

"At the end of 2011, Kentucky judges were reported as 'jailing youths for truancy and other noncriminal offenses at one of the highest rates in the nation....' " N. Jeffrey Blankenship & Erica Blankenship, We Are Young: Status Offenders and the Criminalization of Youth in Kentucky , 41 N. Ky. L. Rev. 273 (2014) (citations omitted).

This section governs disposition hearings for public offenses. It "comes into play only where the child at issue has been determined to have committed certain criminal offenses." Cabinet for Health and Family Services v. P.B. , 2017-CA-001371-ME, 2018 WL 1663576, at *3 (Ky. App. Apr. 6, 2018) (emphasis added).

The underlying charge-habitual runaway-is a status offense. Therefore, the Breathitt Family Court should have followed the procedures outlined in KRS 630.080(4), which provides:
A status offender or alleged status offender who is subject to a valid court order may be securely detained upon a finding that the child violated the valid court order if the court does the following prior to ordering that detention:
(a) Affirms that the requirements for a valid court order were met at the time the original order was issued;
(b) Makes a determination during the adjudicatory hearing that the child violated the valid court order; and
(c) Within forty-eight (48) hours after the adjudicatory hearing on the violation of a valid court order by the child, exclusive of weekends and holidays, the court receives and reviews a written report prepared by an appropriate public agency that reviews the behavior of the child and the circumstances under which the child was brought before the court, determines the reasons for the child's behavior, and determines whether all dispositions other than secure detention have been exhausted or are inappropriate. If a prior written report is included in the child's file, that report shall not be used to satisfy this requirement. The child may be securely detained for a period not to exceed forty-eight (48) hours, exclusive of weekends and holidays, pending receipt and review of the report by the court. The hearing shall be conducted in accordance with the provisions of KRS 610.060. The findings required by this subsection shall be included in any order issued by the court which results in the secure or nonsecure detention of a status offender.
Id.

We note in A.W. , 163 S.W.3d at 7, the Kentucky Supreme Court questioned whether the General Assembly had the authority to limit a court's inherent contempt power. The Court suggested that any act by the General Assembly that curtailed judicial action or interfered with the discharge of judicial function with respect to the power of the court to craft its own contempt orders could be unconstitutional unless comity were granted. See also Lee v. Commonwealth , 2012-CA-001473-MR, 2014 WL 2937777, at *5 n.2 (Ky. App. June 27, 2014) ("Even if the juvenile code tried to restrict the juvenile court's power to enforce its order through contempt, it would be an unconstitutional attempt to hamper judicial action or interfere with the discharge of judicial functions."). At the time A.W. was decided, the prior version of KRS 600.060 was in place. That version did not contain a time limitation on detention for contempt as does the current version. The Court has not yet considered whether the addition of the thirty-day time limitation passes constitutional muster. This issue will have to await consideration as the parties have not briefed this issue and it is not dispositive of the issues before us.