RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1355-MR

DENNY HOLLIDAY                                                              APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 21-CR-01270

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

KAREM, JUDGE: Denny Holliday appeals from the Fayette Circuit Court twice

finding him to be in indirect criminal contempt of court. We affirm as to the first

conviction because Holliday did not timely appeal from that judgment but vacate

and remand the second conviction with instructions to hold an evidentiary hearing.

In December 2021, Holliday was indicted for, among other things,

assault in the fourth degree (third or greater offense within five years) and being a

persistent felony offender in the second degree. At all times relevant to this Opinion, Holliday was in custody pursuant to those charges.

Holliday entered a not guilty plea in early February 2022 but did not appear at the next proceeding, a status hearing held in early March 2022. The recording of that hearing before us is incomplete as it does not show the trial court calling Holliday's case; instead, the recording begins with the court saying, "you know." Video, 3/4/22 at 3:08:55. Holliday's counsel then apologizes for the "waste of time" due to Holliday's nonappearance, to which the court responded, "Mr. Holliday just didn't feel like it today." *Id.* at 3:09:00 *et seq*. Without a complete video record, it is impossible to discern why the court believed Holliday's absence was due to a nonchalant attitude rather than some other unobjectionable explanation.

Holliday appeared at the next status hearing, held two weeks later. However, his attorney was absent, due to illness. One week later, at another status hearing, Holliday and his attorney each were present. The court thanked Holliday for appearing. Video, 3/25/22 at 1:48:48.

The next proceeding was held in late April 2022. Holliday was present. At the next hearing, held in mid-May 2022, Holliday appeared but his counsel did not – again due to illness.

One week later, May 20, 2022, Holliday failed to appear at a status hearing. Again, the video begins after the hearing had already commenced. Holliday's counsel is recorded mid-sentence saying, "and that's the first time that's happened." Video, 5/20/22 at 3:42:35. The judge orally stated that she was going to give Holliday a "warning" that he "may" be held in contempt if he failed to appear for the next proceeding, scheduled for June 3, 2022. *Id.* at 3:42:58 *et seq.* The court issued an order which similarly provided that Holliday's "personal appearance in Court is mandatory. Failure To Appear could result in Contempt." Trial Court Record ("R.") at 39.

Holliday appeared for the June 3 status hearing. He decried the supposed dearth of communication with his appointed counsel. The court stated that it would contact Holliday's counsel's supervisor.

On June 10, 2022, Holliday again failed to appear at a status hearing. Once again, the video record appears to be incomplete as it abruptly begins with the court questioning whether Holliday's case had been assigned to the attorney representing him that day. As it turns out, that attorney was stand-in counsel.

It is difficult to understand every word spoken at this hearing with reliable precision due to some crosstalk. However, it is clear that the court asked if it was correct that Holliday had "refused" to attend the hearing. Video, 6/10/22 at 1:29:08 *et seq.* Some unidentified person responded that Holliday had "refused to

-3-

come." *Id.* at 1:29:23. The court then immediately stated that it had warned Holliday about not appearing (technically, of course, the oral warning was only that Holliday would be held in contempt if he did not appear at the next hearing – which he did) and thus was holding him in contempt and sentencing him to ninety days. No sworn testimony was taken. Holliday's stand-in counsel did not object, nor ask for a hearing.

The court issued a brief order memorializing the oral contempt finding, stating that Holliday "intentionally failed to attend Court" and thus was found to be in contempt and sentenced to 90 days in jail. R. at 44. That order does not contain finality language. The court also issued a commitment order, which contains a handwritten notation at the bottom stating "Held in contempt[.] 90 days to serve[.]" R. at 43. Holliday did not file a motion to alter, amend, or vacate that judgment, nor did he file an appeal.

The next proceeding was a status hearing held in late August 2022. Holliday did not appear. His counsel asked the court for mercy to avoid another contempt charge and said Holliday had significant mental health concerns. The court merely responded that the next hearing would be held on October 7, 2022.

Holliday was not present for that October 7 status conference. The video record again appears incomplete as it begins with the court saying it would "note that he [presumably Holliday] originally had asked for a speedy trial."

-4-

Video, 10/7/22 at 2:47:57. Someone off camera, perhaps the Commonwealth attorney, soon thereafter states that Holliday had "refused to come [to] the last two court appearances[,]" to which the trial court responded "correct." The court then said "alright, I'll hold him in contempt."

Holliday's counsel responded by asking for a "formal contempt hearing," asserting "with the way the staffing is at the jail I think sometimes when it says refused it doesn't really mean they refused." Although counsel's language was imprecise, the gist is clear: Holliday's failure to appear could have been attributable to a mix-up or omission by jail personnel. The trial court immediately responded "denied."

Holliday's counsel then reminded the court that Holliday had a due process right to a formal contempt hearing, to which the court responded "Ok. If you tell me that he's going to come, and you want to schedule a hearing, I'd be glad to." Holliday's counsel replied, "I obviously can't guarantee that, your honor, but he does have rights." The court said it would "be glad as soon as he comes and tells me he wants to exercise them." The court set a January 2023 status hearing and, despite having just denied the request for a contempt hearing, incongruously said counsel could "just let me know" if Holliday wanted a contempt hearing. Video, 10/7/22 between about 2:48:20 and 2:49:19.

The court issued two orders memorializing the October 7 hearing. First, it issued a commitment order which, like its June 2022 predecessor, contains this handwritten notation at the bottom: "Held in contempt[.] Serve 90 days[.]" R. at 48. Next, the court issued an order which provides in its entirety:

> The Court previously advised the Defendant that he could be held in contempt for failing to attend Court. The Court finds that the Defendant intentionally failed to attend Court on June 10, 2022. Therefore, the Court finds the Defendant in contempt and orders that he serve 90 days.
>
> This matter shall be set for a Status Hearing on January 13, 2023 at 1:00 p.m.
>
> IT IS FURTHER ORDERED that the Defendant's Motion through Counsel for a Hearing for Contempt charge is DENIED.

R. at 49. Holliday did not again request a hearing. Instead, he filed this appeal.

Before we begin our merits analysis, we note that this appeal is not moot, even though Holliday has completed serving both ninety-day contempt sentences. "The general rule is, and has long been, that where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed." *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky. 2014) (internal quotation marks and citations omitted). However, "the expiration of a criminal sentence has been held not to moot an appeal from the judgment of conviction,

because there remain consequences of the conviction (such as the loss of various civil rights) deemed sufficient to keep alive the appellant's personal stake in the outcome of the appeal." *Id.* That collateral consequences exception means this appeal is not moot even though Holliday has served his contempt sentences.

The Commonwealth asserts that Holliday waited too long to appeal from the June contempt conviction. We agree. However, we also agree with Holliday that he has timely appealed the October contempt conviction. In other words, though not expressly framed as such by the parties, our review of the record plainly shows that the trial court held Holliday in contempt twice, once in June and a second time in October. That conclusion is based on two main factors.

First, the trial court used present tense language both times. Specifically, the court in October did not say that it "had" found Holliday in contempt in June; instead, after someone noted that Holliday had refused to appear the court said, "alright, I'll hold him in contempt." Video, 10/7/22 at 2:48:27. Because the record does not show that Holliday had sought any relief from the June contempt conviction, there was no logical reason for the trial court to have revisited its having held Holliday in contempt in June. Instead, the logical reason for the court to have been discussing contempt was because it again found Holliday's absence to be contumacious.

Second, the court issued an accompanying commitment order in both June and October. There was no point in issuing a redundant, second commitment order in October if the court intended only to reaffirm that it had found Holliday in contempt in June, especially since by that point Holliday had already served the ninety-day sentence imposed in June.

We are aware that the court's October contempt order curiously references Holliday refusing to appear in June. However, the reference to Holliday having failed to appear in June cannot be reconciled with the otherwise overwhelming circumstantial evidence indicating that the court had convicted Holliday of contempt afresh in October. In fact, the order uses present tense language ("the Court finds the Defendant in contempt"), instead of the past-tense language which would be expected if the court had been referring to it already having found Holliday in contempt in June. Thus, we regard the reference to Holliday's nonappearance in June in the October order as a mere "cut and paste" type of scrivener's error.

As to the June conviction, an appeal from a final judgment must be filed within thirty days after the entry of a final judgment. Kentucky Rule of Criminal Procedure (RCr) 12.04(3). *See also* Kentucky Rule of Appellate Procedure (RAP) 3(A)(1) (effective Jan. 1, 2023). Holliday did not appeal the June contempt finding within the allotted thirty days. Of course, the thirty-day

appellate clock may be paused by the timely filing of a motion for a new trial or a motion to alter, amend, or vacate. *See, e.g.*, RAP 3(E). But Holliday did not file any such clock-stopping motion. In fact, Holliday did nothing to timely contest the June contempt finding.

Moreover, the June contempt order was inherently final and appealable, even though it did not contain finality language, because it wholly resolved that contempt episode. The June order, along with the court's oral pronouncements, found Holliday guilty of contempt and imposed sanctions for that misconduct. Nothing further was required for that conviction to be final and appealable, Holliday's arguments to the contrary notwithstanding.

We dismiss appeals which were not timely filed. *See, e.g.*, *Anglin v. Justice & Public Safety Cabinet*, 480 S.W.3d 291 (Ky. App. 2015); RAP 2(A)(3). This appeal was timely filed as to the October contempt conviction but untimely as to the June contempt conviction. Thus, even though the court erred by not holding an evidentiary hearing in June, we reluctantly agree with the Commonwealth that we may not disturb the June conviction because Holliday did not timely appeal from it.

The October contempt finding is a different matter. Holliday timely asked for a contempt hearing. Unfortunately, the court immediately denied that request. The issue was thus preserved, even though the court oddly later invited

counsel to again request the very hearing which the court had already emphatically declined to hold. Our focus, therefore, for the remainder of this Opinion will be on the October contempt conviction.

We must now ascertain whether Holliday was held in civil or criminal contempt. "Generally, sanctions imposed to benefit an adverse party . . . are deemed civil . . . . Punitive sanctions, however – unconditional sanctions not subject to purgation through compliance with an order and imposed principally if not purely to vindicate the authority of the court – are deemed criminal." *Cabinet for Health and Family Services v. J.M.G.*, 475 S.W.3d 600, 611 (Ky. 2015) (paragraph break omitted). Here, it is plain that the sanctions were entirely punitive, so the court held Holliday in criminal contempt.

Having determined the contempt was criminal, we now must determine whether it was direct or indirect. "A contempt occurring in the presence of the court is *direct contempt*, while a contempt committed outside the presence of the court is *indirect contempt*." *Riley v. Gibson*, 338 S.W.3d 230, 237 (Ky. 2011) (citation omitted). That distinction is important for two reasons. First, the trial court may summarily adjudge direct, petty contempts but "as the alleged contempt becomes more serious or less direct, the United States Constitution's Due Process Clauses require criminal contempt procedures . . . more in accord with the procedural safeguards constitutionally guaranteed for ordinary criminal trials."

*J.M.G.*, 475 S.W.3d at 615.  In other words, direct criminal contempt occurring in the presence of the court "may be punished summarily by the court."  *C.S. v. Commonwealth*, 559 S.W.3d 857, 865 (Ky. App. 2018).  However, indirect criminal contempt "may be imposed only after proceedings that comport with due process."  *Id.* (internal quotation marks and citations omitted).

In short, "indirect contempt – that is, contempt occurring out of Court or not immediately apparent to the Court – requires an evidentiary hearing.  Summary adjudication of indirect contempt is prohibited."  *Cabinet for Health and Family Services v. R.C.*, 661 S.W.3d 305, 315 (Ky. App. 2023) (citations omitted).

Second, the nature of our review depends on whether the contempt is direct or indirect.  Specifically, our Supreme Court has held that a trial court has "very broad discretion to respond as needed to . . . direct contempts" but appellate review of indirect criminal contempt sanctions must be "searching" and "commensurate with the review provided in regular criminal cases of a comparable seriousness . . . ."  *J.M.G.*, 475 S.W.3d at 624.

It was obviously immediately apparent to the trial court that Holliday was not present.  Nonetheless, the contempt here is indirect because Holliday's failure to appear, by itself, was insufficient to constitute contempt.

Our Supreme Court has defined *contempt* as "the willful disobedience toward, or open disrespect for, the rules or orders of a court" and willfulness

-11-

"means with intent or intention." *Poindexter v. Commonwealth*, 389 S.W.3d 112, 117 (Ky. 2012) (internal quotation marks and citations omitted). In other words, criminal contempt must be based on willful disobedience, and so it was incumbent upon the court to ensure that Holliday intentionally failed to appear. Of course, there are possible benign, non-contumacious reasons for Holliday's failure to appear. For example, he could have been ill or, as his counsel posited, jail personnel could have simply failed to bring him to the courthouse.

The possibility that Holliday did not intentionally fail to appear, although perhaps not the most likely explanation since he failed to appear multiple times prior, is why these contempt findings must be classified as indirect. Holliday's absences were wholly within the court's sensory perception, but the underlying reasons for them were not. In other words, the court held that Holliday's absences were intentional, but there is absolutely no sworn testimony to support that conclusion.

We have held in analogous circumstances that contempt stemming from an attorney's failure to appear in court would be indirect because the court "could not arbitrarily assume the existence of the culpable *mens rea* necessary to constitute contempt. The court could not have known why the attorney was absent from the proceedings until *after* he had had an opportunity to explain his conduct."

*Commonwealth v. Pace*, 15 S.W.3d 393, 396 (Ky. App. 2000). The same logic and rationale apply here.

We have forcefully held that indirect criminal contempt must be resolved by "an evidentiary hearing[,]" not a "[s]ummary adjudication . . . ." *R.C.*, 661 S.W.3d at 315. Of course, there was courtroom chatter to the general effect that Holliday had simply refused to appear. But that chatter was unsworn, and Holliday was offered no opportunity to present, or cross-examine, witnesses. Stray, unsworn comments such as those apparently relied upon by the trial court here, are not an acceptable substitute for a constitutionally mandated evidentiary hearing. Moreover, we utterly reject the Commonwealth's unsound argument that the trial court somehow satisfied the evidentiary hearing requirement by setting a status hearing to be held in January 2023.

In sum, the trial court erred by adjudging Holliday to be in indirect criminal contempt without first holding an evidentiary hearing.[1] Therefore, we

---

[1] The trial court's statement that it would hold a hearing only if Holliday's counsel guaranteed Holliday's appearance was improper. First, Holliday had a constitutional right to an evidentiary hearing before being convicted of indirect criminal contempt. Second, Holliday's counsel responded appropriately when she said that she could not personally guarantee Holliday's attendance. As an officer of the court, counsel could not make such a guarantee. As Holliday notes in his brief, the proper procedure was for the court to schedule a hearing and, if Holliday intentionally failed to appear, the court could then have concluded he had waived his right to a hearing. *Fugate v. Commonwealth*, 62 S.W.3d 15, 19 (Ky. 2001) (noting that criminal defendants may generally waive even basic rights).

vacate the October contempt conviction and remand for an evidentiary hearing focused on whether Holliday's failure to appear was willful.

For the foregoing reasons, the Fayette Circuit Court is affirmed as to the June contempt finding but the October contempt finding is vacated and remanded with instructions to conduct an evidentiary hearing.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky