RENDERED: MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1309-MR

CINDY LYNN ADAMS    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.    HONORABLE TIFFANY YAHR, JUDGE
ACTION NO. 19-CI-02847

JOSHUA BARTLEY ANDERSON    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: Cindy Adams appeals from an order of the Fayette Circuit Court, Family Court Division which held her in criminal contempt and sentenced her to forty-five-days' incarceration. Appellant raises multiple issues surrounding her contempt, but we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

This appeal stems from a divorce action between Appellant and Joshua Anderson, who are also parents of two minor children. On July 30, 2025, a

hearing was held regarding a motion to modify timesharing of the children. During this hearing, Appellant testified about taking one of the children to an urgent care center and receiving medication after the appointment. She also produced a picture of the prescription medication bottle which was entered into evidence.

On August 13, 2025, Appellee filed a motion for sanctions alleging that Appellant's testimony about the urgent care visit was false and that the picture of the medication had been altered or was created by artificial intelligence. Appellee's motion stated that he had requested medical records from the urgent care center and the pharmacy, but both claimed no records existed for the time the child was said to have been taken to the urgent care center.

In response to the motion, Appellant denied the allegations and provided more documents to support the child's going to the urgent care center and receiving medication. Appellee's reply to the response indicated that the additional documents were also fake, photoshopped, or created by artificial intelligence.

The trial court first addressed the issue during a motion hour on August 22, 2025. The court indicated that, if the documents were falsified and her testimony untrue, Appellant would be going to jail. Counsel for Appellant indicated that Appellant's testimony and the documents submitted to the court

-2-

were false or altered.[1]  The court then entered a show cause order requesting Appellant appear for a hearing to show cause why she should not be held in contempt.

The show cause hearing was held on September 19, 2025.  During this hearing, counsel for Appellant indicated she believed the court would be holding Appellant in civil contempt; however, the court indicated that it was seeking criminal contempt.  Counsel for Appellant then requested a continuance so that Appellant could consult with a criminal attorney.  That continuance was granted and a new hearing was scheduled for September 26, 2025.

At the new hearing, the court informed the parties that Appellant would be given the opportunity to defend herself.  Appellant's counsel then indicated that Appellant was willing to plead guilty to the contempt and be heard regarding any sentencing.  The court then swore in Appellant and questioned her about her testimony during the July hearing and the fake and altered documents entered into evidence.  Appellant admitted to lying to the court.  After a brief recess, Appellant then apologized to the court and the court sentenced her to forty-five days in jail.  This appeal followed.

---

[1] This counsel would soon thereafter withdraw from representation and Appellant would retain new counsel.

<u>**ANALYSIS**</u>

Before we address the merits of this case, we must first determine whether this appeal is moot because Appellant has long since served her forty-five-day jail term.

> A case becomes moot as a result of a change in circumstances which vitiates the underlying vitality of the action. Generally, appellate courts dismiss appeals that have become moot. However, [a] technically moot issue may nonetheless be subject to appellate review under certain exceptions outlined in *Morgan v. Getter*, 441 S.W.3d 94, 99-100 (Ky. 2014).

*C.S. v. Commonwealth*, 559 S.W.3d 857, 864-65 (Ky. App. 2018) (internal quotation marks and citations omitted). There are four exceptions to the mootness doctrine: 1) collateral consequences; 2) voluntary cessation; 3) capable of repetition, yet evading review; and 4) public interest. *Morgan*, 441 S.W.3d at 99-100.

In the cases of *Z.C. v. Commonwealth*, No. 2024-CA-0694-ME, 2025 WL 285297, at *4 (Ky. App. Jan. 24, 2025), and *Holliday v. Commonwealth*, No. 2022-CA-1355-MR, 2023 WL 5312185, at *2 (Ky. App. Aug. 18, 2023), this Court held that the collateral consequences exception applies to appeals where a sentence for criminal contempt has been served. For example, the Court in *Holliday* held:

> However, the expiration of a criminal sentence has been held not to moot an appeal from the judgment of

> conviction, because there remain consequences of the conviction (such as the loss of various civil rights) deemed sufficient to keep alive the appellant's personal stake in the outcome of the appeal. That collateral consequences exception means this appeal is not moot even though Holliday has served his contempt sentences.

*Id.* at *2 (internal quotation marks and citation omitted). While these cases are not binding pursuant to Kentucky Rules of Appellate Procedure (RAP) 41, we will follow their conclusions, hold that this case is not moot, and address the merits of this case.

Appellant raises multiple arguments regarding her contempt; however, as she admits in her brief none of them was preserved in the trial court. Appellant asks that we review her claims for palpable error pursuant to Kentucky Rules of Civil Procedure (CR) 61.02 and Kentucky Rules of Criminal Procedure (RCr) 10.26. We will do so.

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]" A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error. If not, the error cannot be palpable.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citations and footnotes omitted).

Appellant's first argument on appeal is that she was not provided sufficient due process.

> Criminal contempts, the United States Supreme Court has held, are crime[s] in the ordinary sense, and they implicate, accordingly, the full panoply of procedural protections applicable to the states under the federal Constitution. What the Constitution requires, of course, is not a single, monolithic process imposed on every case. It requires, rather, the process that is "due," and in the contempt area, the Court has explained, it has arrived at the process due in different types of cases by attempt[ing] to balance the competing concerns of necessity [the court's need for orderly processes and effective rulings] and potential arbitrariness [the risk the contempt power poses of fusing in the judge legislative, executive, and judicial powers]. This balancing allow[s] a relatively unencumbered contempt power when its exercise is most essential, and require[s] progressively greater procedural protections when other considerations come into play.

*Cabinet for Health and Family v. J.M.G.*, 475 S.W.3d 600, 611-12 (Ky. 2015) (internal quotation marks and citations omitted). "[C]riminal contempt may be either direct or indirect. Direct criminal conduct is generally defined as conduct committed in the presence of the court, and indirect criminal contempt is conduct committed outside the presence of court." *Galvin v. First & People's Bank and Tr. Company*, 720 S.W.3d 876, 882 (Ky. App. 2025) (citation omitted).

Direct criminal contempt is usually "subject to summary adjudication." *J.M.G.*, 475 S.W.3d at 612.

-6-

Summary proceedings may not be adequate, however, even with respect to some direct contempts. If a court delays punishing a direct contempt until the completion of trial, for example, due process requires that the contemnor's rights to notice and hearing be respected. . . . For indirect contempts—contempts, that is, occurring out of court, or contempts that are not immediately apparent to the court, but that require to be known the confession of the party or the testimony of others—[s]till further procedural protections are afforded. Summary adjudication of indirect contempts is prohibited, the Court has declared, and criminal contempt sanctions are entitled to full criminal process.

That those accused of indirect or serious direct criminal contempts are entitled to "full criminal process" does not mean, the United States Supreme Court has explained, that any prosecution of contempt must now be considered an execution of the criminal law in which only the Executive Branch may engage. On the contrary, lest the judicial power be reduced to a mere mockery, it has long been deemed essential that the Judiciary have a means to vindicate its own authority without complete dependence on other Branches. Contempt proceedings are that means, and accordingly, [c]ourts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated.

*Id.* (internal quotation marks and citations omitted).

Here, we believe Appellant's false testimony to the court and fabricated documentary evidence were indirect criminal contempt. We believe so because it took additional evidence from Appellee to bring Appellant's actions to light. Due to this being indirect criminal contempt, the court had to provide more than a summary adjudication. Considering the case law cited above and the fact

that we are reviewing for palpable error, we conclude that no error, palpable or otherwise, occurred as it pertains to due process. Appellant was put on notice as to the allegations against her via Appellee's motion for sanctions and the trial court's show cause order. In addition, the court scheduled two show cause hearings in which Appellant could defend her actions. The court even continued the first hearing in order for Appellant to confer with criminal counsel. Appellant was informed of her alleged contemptuous actions, given time to consult counsel, and was provided an opportunity to present evidence in her defense. She was provided adequate due process.

Appellant's next argument on appeal is that she should not have been held in contempt because she did not violate a court order. She further claims that the court could not hold her in contempt for violating criminal laws, like forgery or perjury.

"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Poindexter v. Commonwealth*, 389 S.W.3d 112, 117 (Ky. 2012) (internal quotation marks and citation omitted).

> It [also] includes those acts done in disrespect of the court or its processes or which obstruct the administration of justice or tend to bring the court into disrepute. It covers not only acts which directly and openly insult or resist the powers of the court or the persons of the judges, but to consequential, indirect, and constructive contempts which obstruct the process,

> degrade the authority, and contaminate the purity of the
> court.

*Mitchell v. Commonwealth*, 206 Ky. 634, 268 S.W. 313, 313 (1925) (citation omitted).

While it is true that Appellant did not disobey an order of the court, she did obstruct justice and disrespect the court. Providing false testimony during a hearing and submitting altered or fake documents into evidence is the epitome of resisting the authority of the court and degrading its authority. Furthermore, the court did not try to convict Appellant of a crime; it simply held her accountable for lying to the court. The court did not err in holding Appellant in contempt.

Appellant's next argument is that the court violated the separation of powers doctrine by charging her with the crimes of perjury and forgery. This argument is without merit. As previously stated, the court held Appellant in contempt for lying to the court and introducing fake documents into the record. The judicial branch has the power to "vindicate its own authority without complete dependence on the" executive and legislative branches. *J.M.G.*, 475 S.W.3d at 612 (internal quotation marks and citation omitted). The court did not charge Appellant with or convict Appellant of a crime; therefore, there was no violation of the separation of powers.

Appellant's final argument on appeal is that the trial court erred in not engaging in a *Boykin*[2] colloquy before she pleaded guilty. As most legal practitioners know, a *Boykin* colloquy allows the court to inform a criminal defendant of the rights he or she is giving up when pleading guilty and to help the court determine that the plea of guilty is knowingly and intelligently given. Appellant argues that because such a colloquy did not occur, her contempt must be reversed. We disagree.

This case does not concern a criminal conviction; therefore, we do not believe a *Boykin* type colloquy is required. Appellant did not plead guilty to a crime; she confessed to contemptuous conduct. Regardless, even if we do equate confessing to contempt to pleading guilty in a criminal prosecution, we believe the record is clear that Appellant knowingly and voluntarily confessed to contempt of court.

> The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. There must be an affirmative showing in the record that the plea was intelligently and voluntarily made. However, the validity of a guilty plea is determined not by reference to some magic incantation recited at the time it is taken but from the totality of the circumstances surrounding it.

---

[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

*Sparks v. Commonwealth*, 721 S.W.2d 726, 727 (Ky. App. 1986) (internal quotation marks and citations omitted).  Here, the court specifically gave Appellant time to consult with a criminal attorney.  At the final contempt hearing, trial counsel informed the court that Appellant was going to plead guilty to criminal contempt and that they had discussed what that entails.  The court also swore Appellant in, went through the accusations in the show cause order, and asked her if she was guilty of the contemptuous acts.  Appellant responded in the affirmative and apologized to the court for her actions.  Based on the circumstances of this case and our review for palpable error, we find no manifest injustice.

## CONCLUSION

Appellant's actions were gravely serious and undermined the administration of justice.  Pursuant to our palpable error review of this case, we find no manifest injustice and affirm the judgment of the trial court.


ALL CONCUR.


BRIEF FOR APPELLANT:

Michael Davidson
Lexington, Kentucky

BRIEF FOR APPELLEE:

Carl D. Devine
Della C. Cummings
Lexington, Kentucky